J-S38042-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF M.K., A MINOR CHILD | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.B., NATURAL FATHER | : | No. 363 WDA 2018 |

Appeal from the Order Entered February 8, 2018
in the Court of Common Pleas of Fayette County Orphans' Court
at No(s):  53 Adopt 2017

BEFORE:   BOWES, NICHOLS, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED SEPTEMBER 19, 2018**

D.B. (Father) appeals from the order entered February 8, 2018, in the Court of Common Pleas of Fayette County, Orphans' Court division, which terminated involuntarily his parental rights to his minor daughter, M.K. (Child), born in October 2013.[1]  We affirm.

In October 2015, Fayette County Children and Youth Services (CYS) became involved with Child after receiving a report concerning Mother's suspected drug abuse.  Orphans' Court's Findings of Fact, 2/8/2018, at 1.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Although the record does not contain a decree concerning M.D. (Mother), it appears the orphans' court terminated her parental rights on the same day Father's rights were terminated.  Findings of Fact, 2/8/2018, at 5. We are unaware if Mother has filed an appeal.

At the time, Father was incarcerated.[2]  A safety plan was implemented and Child was placed with R.Z., a family friend.  *Id.*  Based upon Mother's multiple negative drug screens, the safety plan was lifted and Child was returned to Mother on January 11, 2016.  *Id.*

However, the next day, Child was removed from Mother's care once again after "Mother was found unresponsive [from a] suspected overdose of either Xanax or [h]eroin. … It was [] learned that [M]other was [discovered] unresponsive with [C]hild sleeping on her chest."  N.T., 12/11/2017, at 9. Mother was transported to the hospital and maternal grandmother took Child.  "Maternal [g]randmother was not able to be an ongoing caregiver for" Child, and Child was eventually placed back with R.Z.[3]  *Id.*  Child was adjudicated dependent on January 26, 2016.

Mother initially told CYS that her paramour, M.K., was Child's father. N.T., 12/11/2017, at 25.  CYS later determined that M.K. was neither Child's biological nor legal father and eventually learned that Father was the biological father of Child. *Id.*

---

[2] Father was incarcerated at the time of Child's birth and remained in prison until his release in November 2016.

[3] Child remained with R.Z. for almost a year before moving to a foster home in November 2016.  Child moved to a second foster home for several months in 2017, before returning to her first foster home in June 2017, where she continues to reside. Child lives with her maternal half-sibling N.S. Child's foster parents "want to offer permanency to her."  Findings of Fact, 2/8/2018, at 2; N.T., 12/11/2017, at 13.

In February 2016, CYS sent a proposed family service plan to Father. Father acknowledged receipt but refused to sign the plan.[4]   N.T., 12/11/2017, at 25.  A second proposed plan was sent to Father in July 2016, which Father did sign.  Findings of Fact, 2/8/2018, at 3.  The service plan set forth the following: (1) complete drug and alcohol assessment; (2) enroll in parenting classes; (3) maintain appropriate housing; (4) maintain a bond with Child; and (5) complete sex offender treatment.  N.T., 12/11/2017, at 27-28.

Pertinent to the termination of his parental rights, Father is an indicated perpetrator of sexual abuse in "four cases.  One case in regard to his own child.[5]   One case in regard to an older half[-]sibling of that child.  And then two other children."  N.T., 12/11/2017, at 28.   In May 1999, Father pled guilty to statutory sexual assault and pled *nolo contendere* to indecent assault and corruption of minors.  Father was sentenced to a term of five to 10 years' incarceration.  CYS Exhibits 1, 2. Because of these convictions, Father is a tier 3 registered sex offender.   Petition for Involuntary Termination of Parental Rights, 6/15/2017, at 4 (unnumbered).

---

[4] Father testified that he refused to sign the family service plan because he was confused.  Specifically, he testified that he "saw the word adoption" on the paperwork and "freaked out."  N.T., 1/9/2018, at 52.  After speaking with CYS, he agreed he would sign the plan.

[5] It appears from the record that this child, who is not part of this case, is now an adult. N.T., 1/9/2018, at 66.

After serving his sentence, Father was released. It appears Father was later re-incarcerated, although the exact details are not specified in the record. It was during this second period of incarceration that Child was born. Father was released from prison in November 2016. Shortly after his release, based upon his prior record and sex offender status, CYS filed a motion for finding of aggravated circumstances. After the hearing on this motion, the orphans' court

> entered an aggravated circumstances order on January 26, 2017, wherein the court made a finding that Father was convicted of [] statutory sexual assault on May 27, 1999. In addition, the court made a finding that Father is required to register as a tier 3 sex offender under Megan's Law. The court ordered that "no efforts are to be made to preserve the family and reunify [C]hild with [F]ather." Thereafter, Father did not file an appeal from the aggravated circumstances order.

Orphans' Court Opinion, 4/3/2018, at 6.

On June 15, 2017, CYS filed a petition to terminate involuntarily Father's rights. The petition sought termination of Father's rights under 23 Pa.C.S. §§ 2511(a)(2), (8), and (11). The court conducted a termination hearing on December 11, 2017 and January 9, 2018, where CYS detailed Father's lack of compliance with the family service plan and introduced the evidence summarized *supra*.[6] Father testified, *inter alia*, that he has never

_____

[6] We note with displeasure that the attorney who was appointed "to represent the interest of" Child during the termination proceedings, **see** Preliminary Decree, 7/13/2017, did not file a brief in this Court or otherwise advocate for Child's interests on appeal. Counsel's duty to represent a Child
*(Footnote Continued Next Page)*

- 4 -

met Child and only saw her "briefly once, out in the hallway." N.T., 1/9/2018, at 61.

Following the hearing, the court simultaneously filed findings of fact and entered a decree, which terminated Father's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(11) and (b). Findings of Fact, 2/8/2018, at 4; Final Decree Involuntary Relinquishment of Parental Rights, 2/8/2018. Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.

Father now raises the following issues for our review:

(1) Did the court abuse its discretion on terminating [Father's] rights as [CYS], failed to present clear and convincing evidence to sustain their burden on the three grounds raised in their petition [23 Pa.C.S. §§ 2511(a)(2)], (5)[7] and (8)[,] to warrant the termination of [Father's] parental rights.

_(Footnote Continued)_ ─────────────────────

does not stop at the conclusion of the termination of parental rights hearing. **_In re Adoption of T.M.L.M._**, 184 A.3d 585, 590 (Pa. Super. 2018); **_see also In re M.T._**, 607 A.2d 271, 276 (Pa. Super. 1992) (observing that child's counsel abdicated his legal responsibilities to his client because counsel, _inter alia_, failed to file a brief, indicate that he joined another party's brief, or otherwise notify this Court of his client's position). In this case, counsel's failure to participate on appeal has not substantially hindered our review. Thus, we decline to remand this case for further briefing or proceedings.

[7] The record reflects CYS sought termination of Father's rights under 23 Pa.C.S. §§ 2511(a)(2), (8) and (11). Petition for Involuntary Termination of Parental Rights, 6/15/2017, at 4 (unnumbered). Thus, any argument raised by Father concerning subsection (a)(5) is meritless and not relevant to the disposition of this appeal.

    (2)    [Father] was prevented from having any contact with or information about [] Child once he was released from jail and he has been refused any future information, photos, or supervised contact with [] Child. He asserts that he should be permitted to have a post adoption custody agreement that provides him with some future information about [] Child.

Father's Brief at 3 (unnecessary capitalization omitted).

First, we address Father's challenge to the termination decree, which we review mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in

the second part of the analysis pursuant to [subs13]ection 2511(b): determination of the needs and welfare of the child[.]

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In its opinion to this Court, the orphans' court stated that it found CYS "satisfied its burden under each of the three statutory sections cited in its petition." Orphans' Court Opinion, 4/3/2018, at 5. However, the orphans' court's findings of fact entered alongside the decree only referenced subsection 2511(a)(11). Thus, we will examine only whether CYS met its burden under that subsection, which provides the following.

> **(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (11) The parent is required to register as a sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or I (relating to continued registration of sexual offenders) or to register with a sexual offender registry in another jurisdiction or foreign country.

23 Pa.C.S. § 2511(a)(11) (footnote omitted).

Preliminarily, we note that Father makes no effort to argue that the orphans' court abused its discretion pursuant to subsection 2511(b).[8] Thus,

---

[8] Subsection 2511(b) sets forth the following.

> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the

*(Footnote Continued Next Page)*

Father has waived that issue, and we will focus our analysis solely on subsection 2511(a)(11). *See In re Adoption of R.K.Y.*, 72 A.3d 669, 679 n.4 (Pa. Super. 2013) (declining to address subsection 2511(b) where the appellant did not make an argument concerning that subsection).[9]

At the termination hearing, Father stated that when he signed his plea agreement he was required to register as a sex offender for ten years, but since then the law had changed and he was now a lifetime registrant. N.T., 1/9/2018, at 62. Father testified that he had spoken with his attorney and was under the impression this would change and he would not "be on the registry much longer." *Id.* On appeal, Father reiterates that "his reporting requirements will be removed from his record once the court reviews and

*(Footnote Continued)* _____

> child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

[9] Even if Father were to raise an issue concerning subsection (b), any such argument would be fruitless. Although there was no specific testimony concerning the bond between Child and Father, it can be inferred that no bond exists since Child has never met Father. N.T., 1/9/2018, at 61. *See In Re K.Z.S.*, 946 A.2d 753, 762-63 ("In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists.").

- 8 -

rules on his after-discovered evidence claim" in his criminal case.  Father's Brief at 15.

Despite the foregoing, in his brief to this Court, Father does not dispute nor discuss the orphans' court's finding that termination was proper under subsection (a)(11).  **See** Findings of Facts, 2/8/2018, at 4 (CYS "has proven by clear and convincing evidence that Father is required to register as a sexual offender for life, thereby proving the grounds for termination under" subsection (a)(11)).  In fact, at the termination hearing, counsel for Father stipulated that he "plead guilty at two separate criminal case numbers[,]" which triggered the requirement that Father register as a sex offender and Father acknowledged he was a registered sex offender.  N.T., 12/11/2017, at 31; N.T., 1/9/2018, at 62. Not only did Father fail to preserve on appeal any issue with respect to subsection (a)(11), **see** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."), Father makes no argument that this subsection was erroneously applied to him or that CYS failed to present sufficient evidence that he fell within the category of individuals who are subjected to the subsection by virtue of his current registration requirements.  **See In re W.H.,** 25 A.3d 330, 339, n.3 (Pa. Super. 2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other

meaningful fashion capable of review, that claim is waived.") (quotation marks omitted).

Even if Father had not waived this issue, our review of the record reveals that CYS introduced evidence and entered exhibits regarding Father's convictions, to which Father's counsel stipulated. Furthermore, Father does not dispute that at the time of the hearing, he was required to register as a sex offender. Thus, we find the orphans' court committed no abuse of discretion.

Lastly, we address Father's contention that the orphans' court should have provided Father with a post-adoptive contact agreement, which would allow Father to have continued contact with Child. The entirety of Father's argument with respect to this issue is as follows.

> [Father] argues in the alternative that, if the court terminates his rights, he should still have a post[-]adoptive agreement. [Father] asserts that he should be permitted limited supervised contact with [C]hild, that he should be permitted to have photographs of her and that he receive information as to her progress educationally, etc.

> [Father] asserts that it is in [C]hild's best interest to know [F]ather and to have limited contact with him. It would not harm [C]hild if [Father] was permitted to have information: pictures[ and] general information about how she is doing. Therefore, if the court terminates his parental rights, [Father] would still request that he receive some post adoptive information regarding [C]hild.

Father's Brief at 16 (notes of testimony citation omitted).

Although it is unclear from his brief, since Father cites no case law or statute in support of this issue, we presume Father is seeking continued

- 10 -

contact with Child per an Act 101 post-adoption contact agreement.[10] Act 101 provides "an option for adoptive parents and birth relatives to enter into a **voluntary** agreement for ongoing communication or contact that: (1) is in the best interest of child; (2) recognizes the parties' interests and desires for ongoing communication or contact; (3) is appropriate given the role of the parties in the child's life; and (4) is subject to approval by the courts. 23 Pa.C.S. § 2731 (emphasis added).

While Father will be entitled to notice of the option to enter into a voluntary agreement for continued contact or communication with Child by the agency or representative of the parties in Child's adoption, **see** 23 Pa.C.S. § 2733(c), the orphans' court does not have the authority to direct the parties to allow Father to have continued communication with Child after his rights have been terminated. The statute is clear that an Act 101 agreement or an "open adoption" is a "purely voluntary arrangement requiring the consent of the adoptive parties." **In re Adoption of G.L.L.**, 124 A.3d 344, 348 (Pa. Super. 2015).

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by terminating Father's parental rights involuntarily. Therefore, we affirm the court's decree terminating Father's parental rights.

---

[10] Notably, when discussing the prospect of continued communication with Child, Father conceded that Child being adopted would be in her "best interests." N.T., 1/9/2018, at 61.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/19/2018